J-S18019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT L. LONGO | : | |
| | : | |
| Appellant | : | No. 1812 MDA 2019 |

Appeal from the Judgment of Sentence Entered February 8, 2018
In the Court of Common Pleas of Snyder County
Criminal Division at No(s):  CP-55-CR-0000404-2016

BEFORE:   KUNSELMAN, J., KING, J., and STEVENS, P.J.E.*

MEMORANDUM BY KING, J.:                      **FILED JUNE 23, 2020**

Appellant, Robert L. Longo, appeals from the judgment of sentence entered in the Snyder County Court of Common Pleas, following his jury trial convictions for two counts of stalking and one count of witness intimidation.[1] We affirm.

The relevant facts and procedural history of this appeal are as follows.

> Previously, [Appellant] had pled guilty to simple assault and terroristic threats, arising out of a January 2016 incident in which he physically assaulted his then-wife, Alicia [Durkin].[2] In March 2016, while he was in prison, [Appellant] sent two letters to Alicia, conveying threats to her and her family from other inmates, detailing physical abuses he had suffered in prison, and stating that he did not want a divorce.  [Appellant] also asked Alicia to tell the District

_____

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2709.1(a)(1), (2), and 4952(a)(2), respectively.

Attorney that she lied (presumably about the assault), and stated that he would let "them" kill him if she did not recant.

[2] [Appellant] and Alicia were married on October 2, 2015. Alicia testified at trial that she and [Appellant] were married for approximately one year, but that they had been separated for most of that time. Their divorce was final at the time of trial.

In September 2016, after [Appellant] was released from prison, and while he was under supervision, Alicia began receiving emails from "Anthony Falcone" with an email address of TJFalconeMafia1@gmail.com.[3, 4] In the emails, "Anthony Falcone" threatened to kill [Appellant] if Alicia did not respond, or if she told the police about the threats, and indicated on several occasions that Alicia was being watched. The emails progressed to include threats to Alicia. In one email to Alicia, "Anthony Falcone" stated, "You want out of the family it's going to have to be your life."

[3] Alicia's mother, Kathleen Durkin …, also received emails from the TJFalconeMafia1@gmail.com account.

[4] At trial, Alicia testified that [Appellant] had previously led her to believe that his family was involved in the mafia, and that there had been incidents in which [Appellant] threatened her by telling her that his cousin Anthony would kill her family. Alicia also testified that she had asked [Appellant's] father whether there was anyone in his family named Anthony, and his father replied that there was not.

After receiving information that [Appellant] had violated a condition of supervision prohibiting threatening communications, Northumberland County Probation[5] made contact with Appellant and conducted a search, during which two cell phones were recovered.

[5] [Appellant] had originally been placed under the supervision of Snyder County Probation. However, as [Appellant] was residing in Northumberland County, his supervision was transferred to Northumberland County Probation.

The cell phones were eventually turned over to the Selinsgrove Police Department, and the police applied for and obtained a search warrant to examine the contents of the phones. During the search, the police discovered that the TJFalconeMafia1@gmail.com account was set up on one of the cell phones. The police saw the messages that had been sent to Alicia, and confirmed that the emails that Alicia and [Kathleen] Durkin had received were sent from the account open on the cell phone.

Following a jury trial, [Appellant] was convicted of two counts of stalking and one count of intimidation of a witness. On February 8, 2018, the trial court sentenced [Appellant] to concurrent prison terms of 14 months to 5 years for the stalking charges, and a consecutive prison term of 16 months to 7 years for the intimidation of a witness charge. The trial court also ordered [Appellant's] sentence to be served consecutively to his Northumberland County sentence.

*Commonwealth v. Longo*, No. 376 MDA 2018, unpublished memorandum at 1-3 (Pa.Super. filed December 12, 2018) (internal record citations omitted).

On December 12, 2018, this Court affirmed Appellant's judgment of sentence. Specifically, this Court determined that Appellant had waived all issues due to a defective appellate brief. Appellant subsequently filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on August 26, 2019.

On September 17, 2019, Appellant timely filed a counseled petition pursuant to the Post Conviction Relief Act ("PCRA").[2] Among other things, Appellant's petition argued that prior counsel was ineffective for submitting a

_____

[2] 42 Pa.C.S.A. §§ 9541-9546.

- 3 -

defective appellate brief to the Superior Court. On October 24, 2019, the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc*.

Appellant timely filed a notice of appeal *nunc pro tunc* on October 31, 2019. On November 1, 2019, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on November 12, 2019.

Appellant now raises two issues for our review:

> WHETHER [APPELLANT] WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BECAUSE THE PROSECUTION MADE PREJUDICIAL STATEMENTS TO THE JURY DURING CLOSING ARGUMENT WHICH IMPLIED THAT [APPELLANT] HAD THE BURDEN OF PROOF.
>
> WHETHER THE TRIAL COURT ERRED BY PERMITTING THE ADMISSION OF EMAILS THAT WERE NOT PROPERLY AUTHENTICATED.

(Appellant's Brief at 6).

In his first issue, Appellant contends the prosecutor's closing argument improperly implied that Appellant bore the burden of proof at trial. Appellant emphasizes the following comment from the prosecutor: "There's no Anthony Falcone. [Appellant] had the opportunity to bring that guy here today but no, he's not going to …." (Appellant's Brief at 12) (quoting N.T. Trial, 11/28/17, at 194-95). Appellant insists this comment misled the jury into thinking that Appellant had the burden of presenting "Anthony Falcone" as a witness, and Appellant failed to satisfy that burden. Appellant concludes the prosecutor's closing argument violated his due process rights, and he is entitled to a new

trial. We disagree.

As a prefatory matter, "the lack of a contemporaneous objection constitutes a waiver of any challenge to the prosecutor's closing remarks." ***Commonwealth v. Rivera***, 603 Pa. 340, 370, 983 A.2d 1211, 1229 (2009), *cert. denied*, 560 U.S. 909, 130 S.Ct. 3282, 176 L.Ed.2d 1191 (2010). ***See also*** Pa.R.A.P. 302(a) (providing general rule that issues not raised in trial court are waived and cannot be raised for first time on appeal). Here, Appellant did not object to the prosecutor's closing argument or seek any type of curative instruction.[3] Consequently, Appellant's claim is waived in this appeal.

In his second issue, Appellant asserts a party seeking to admit evidence of electronic communications, such as emails, must properly authenticate the evidence before a court may admit it. Appellant argues the Commonwealth failed to properly authenticate the emails sent from the "Anthony Falcone" account to Alicia and Kathleen Durkin, because it did not present evidence to show that the emails were actually sent from the cell phone that police recovered from Appellant. Appellant relies on ***Commonwealth v. Koch***, 39

---

[3] In his counseled PCRA petition, Appellant conceded that trial counsel failed to object to the prosecutor's closing argument, and Appellant requested PCRA relief on this basis. (***See*** PCRA Petition, filed 9/17/19, at ¶ 21). The PCRA court, however, did not explicitly provide relief on this basis. (***See*** Order, filed 10/24/19, at 1). Moreover, the trial court also determined that Appellant had waived this claim, albeit due to an impermissibly vague Rule 1925(b) statement. (***See*** Trial Court Opinion, filed November 20, 2019, at 2).

A.3d 996 (Pa.Super. 2011), for the proposition that a person's physical proximity to a cell phone is not probative of whether that person authored electronic communications sent from that cell phone. Further, Appellant insists the Commonwealth failed to prove that he created the "TJFalcone" email account. Absent proper authentication of the emails at issue, Appellant concludes the trial court abused its discretion by admitting the emails into evidence. We disagree.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court . . . [and] we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. [I]f in reaching a conclusion the trial court [overrides] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa.Super. 2014), *appeal denied*, 632 Pa. 667, 117 A.3d 294 (2015) (internal citations and quotation marks omitted).

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 787, 128 A.3d 220 (2015).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable,

- 6 -

or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

***Commonwealth v. Danzey***, 210 A.3d 333, 342 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 219 A.3d 597 (2019) (internal quotation marks omitted).

Pennsylvania Rule of Evidence 901 governs the authentication of evidence as follows:

### Rule 901. Authenticating or Identifying Evidence

**(a) In General.** Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

**(b) Examples.** The following are examples only—not a complete list—of evidence that satisfies the requirement:

(1) *Testimony of a Witness with Knowledge.* Testimony that an item is what it is claimed to be.

\* \* \*

(4) *Distinctive Characteristics and the Like*. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.

Pa.R.E. 901(a), (b)(1), (4).[4]

_____

[4] On May 20, 2020, the Pennsylvania Supreme Court announced the amendment of Rule 901(b) to include the following language:

"[E]-mails and text messages are documents and subject to the same requirements for authenticity as non-electronic documents generally." **Koch, supra** at 1004. **See also Danzey, supra** at 337-38 (explaining Pennsylvania appellate courts have also considered authentication of computerized instant messages and communications made on Facebook and other social media platforms).

> A document may be authenticated by direct proof, such as the testimony of a witness who saw the author sign the document, acknowledgment of execution by the signer, admission of authenticity by an adverse party, or proof that the document or its signature is in the purported author's handwriting. A document also may be authenticated by circumstantial evidence, a practice which is uniformly recognized as permissible.

---

> (11) *Digital Evidence.* To connect digital evidence with a person or entity:
>
> > (A) direct evidence such as testimony of a person with personal knowledge; or
> >
> > (B) circumstantial evidence such as:
> >
> > > (i) identifying content; or
> > >
> > > (ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

**In Re: Order Approving the Amendment of Pa. Rule of Evid. 901**, No. 841, Supreme Court Rules Docket (Pa. May 20, 2020) (effective Oct. 1, 2020) (*per curiam*). The amended comment explains that "Digital evidence" includes emails, and: "The proponent of digital evidence is not required to prove that no one else could be the author. Rather, the proponent must produce sufficient evidence to support a finding that a particular person or entity was the author." **Id.**

\*　　\*　　\*

> [T]he difficulty that frequently arises in e-mail and text message cases is establishing authorship. Often more than one person uses an e-mail address and accounts can be accessed without permission. In the majority of courts to have considered the question, the mere fact that an e-mail bears a particular e-mail address is inadequate to authenticate the identity of the author; typically, courts demand additional evidence.

***Koch, supra*** at 1004 (internal citations and quotation marks omitted).

Instantly, Alicia Durkin testified that Appellant had manipulated her with threats of violence during their marriage. (***See*** N.T. Trial at 100). Specifically, Appellant claimed to have a cousin named "Anthony Falcone." (***Id.***) Appellant insisted that Anthony was a member of the mafia, and Anthony would do harm to Alicia or her family if Alicia ever told anyone about Appellant's misconduct. (***Id.***)

Fearing that Anthony might harm her or her family, Alicia Durkin contacted Appellant's father to ask whether Anthony actually existed. (***Id.*** at 101). Alicia's mother, Kathleen Durkin, was present for Alicia's conversation with Appellant's father. (***Id.*** at 53). Significantly, Appellant's father denied that Appellant has a cousin named Anthony. (***Id.*** at 53-54, 101).

The Commonwealth also introduced several emails sent from the "TJFalcone" email account to Alicia and Kathleen Durkin. Alicia Durkin began receiving the emails on September 16, 2016, a few days after Appellant was released from jail. (***Id.*** at 120, 140). Even though the emails came from the

"TJFalcone" account, Alicia Durkin testified that the content of the messages "looked like stuff [Appellant would] say" in prior letters he sent to her. (*Id.* at 128, 137). Alicia Durkin also explained that Appellant had a penchant for creating alter egos to express different aspects of his personality and to further his ambition of becoming a professional wrestler. (*Id.* at 104-05).

Additionally, Kathleen Durkin explained that Alicia Durkin began forwarding the emails to her. Kathleen Durkin would read the forwarded emails, because Alicia Durkin "didn't want to look at them." (*Id.* at 51). Kathleen Durkin immediately concluded that "Anthony Falcone" did not exist, as was apparent from the prior conversation with Appellant's father. Kathleen Durkin posited that the emails from "Anthony Falcone" were authored by Appellant as a way "to make the fear factor stronger" for his prior threats to Alicia Durkin. (*Id.* at 145).

Selinsgrove Police Officer Francis Petrovich testified that he obtained a warrant to examine the contents of the cell phones that the probation department recovered from Appellant. Officer Petrovich "did see the e-mail account set up on one of the phones back to this TJFalconeMafia1@gmail.com." (*Id.* at 87). Officer Petrovich elaborated on his investigation during the following exchange on cross-examination:

> [COUNSEL]:   Officer Petrovich, there [were] two phones, is that correct?
>
> [WITNESS]:   Yes there was.
>
> [COUNSEL]:   And which phone sent the e-mails?

[WITNESS]:    I would have to recall back [sic] to my report.

[COUNSEL]:    But you can be able to tell which phone sent those e-mails, right?

[WITNESS]:    One of the two phones recovered by probation.

\*     \*     \*

[COUNSEL]:    You could tell that that e-mail was written on that phone and sent?

[WITNESS]:    Yes out of one of the two phones, correct.

(*Id.* at 88-89).

Although Appellant objected to the Commonwealth's authentication of the emails, the trial court determined that the Commonwealth properly established that Appellant sent the emails using the "TJFalcone" account. (*See* Trial Court Opinion at 4). We agree that sufficient circumstantial evidence supported the court's decision, including testimony that: 1) the content of the emails was similar to that of other letters Alicia Durkin had received from Appellant; 2) Appellant's father said that Appellant did not have a cousin named Anthony Falcone; 3) Appellant had a penchant for creating alter egos; and 4) police connected the emails to the account on Appellant's cell phone. **Compare Koch, supra** at 1005 (emphasizing detective's testimony regarding his transcription of text messages from defendant's cell phone was insufficient to authenticate defendant as author; Commonwealth did not present testimony from persons who received messages, and

- 11 -

messages did not include context clues tending to reveal sender's identity). Under these circumstances, the trial court did not abuse its discretion by admitting Appellant's emails into evidence. ***See Belknap, supra***. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/23/2020